TAYLOR AND OTHERS *VS.* TAYLOR AND OTHERS.

A clause in a testator's will was as follows: "And whereas my wife has, by will, given her property to my said daughters, my will is, that the property of my said wife shall be estimated at its fair value, and the share of my son Edward, and the share given to the children of my son Seymour, and the share given to the children of my son George, shall, each share, be three hundred dollars more than the share each, given to my said daughters, after the estimated value of my wife's property, is added to their respective shares." Held, that it was not the intention of the testator, that a son should receive a larger inheritance from both parents, than a daughter, but that a sons's proportion of the father's property should be large enough to counterbalance the disparity, created by the mother's disposition of her estate, thereby securing to all his children an equal inheritance.

THIS was an appeal from a decree of the court of probate for the district of Westport, making distribution of the estate of Seymour Taylor, deceased.

On the 19th day of May, 1848, Seymour Taylor made his last will and testament, and died on the ——— day of March, 1850. The portion of said will, material to the present case, is as follows:

"1st. I give, devise, and bequeath to my beloved wife, Mercy Taylor, all my real estate, of whatever description, and wherever situated, to have and to hold to her use and behoof, for and during all the time she may remain my widow, and no longer. I also give to my said wife, for and during the full time aforesaid, for her use, all my household furniture. I also give to my said wife, one cow. The property above devised and bequeathed to be in lieu of dower in my estate.

"2d. After the payment of my just debts, funeral charges, and the expenses of settling my estate, I give, devise and bequeath all the rest and residue of my estate, both real and personal, to my children, Edward Taylor, Mary Taylor, Martha Ells and Eliza Haythorne; and also to my grandchildren, Stephen Taylor, Harriet Taylor, John Taylor,

George Taylor, and Charles Taylor, the children of my son, Seymour Taylor; and to Ann Eliza Taylor, George F. Taylor, and ———— Taylor, the children of my son, George Taylor, in manner and form following, to wit:

"The residue of my estate, my will is, shall be divided into six shares, or parts; one of which I give, devise, and bequeath to my son Edward, to him and to his heirs forever; and one share to each of my said daughters; one share to the children of my son, Seymour, above named, to be equally divided among them; and one share to the above named children of my son, George, to be equally divided among them. And whereas, my wife has, by will, given her property to my said daughters, my will is, that the property of my said wife shall be estimated at its fair value, and the share of my son, Edward, and the share given to the children of my son, Seymour, and the share given to the children of my son, George, shall each share be three hundred dollars more than the share each given to my said daughters, after the estimated value of my wife's property is added to their respective shares. The shares of my said daughters being to them, their heirs and assigns."

By a subsequent clause in his will, the testator gave in trust, to his son Seymour Taylor, the share of his estate before given to the children of said son, and gave in trust, to his son, George Taylor, the share of his estate given before to the children of said son. Also, by a codicil to said will, the share given to Edward, was devised and bequeathed to him in trust, for his children.

After the decease of the testator, this will was duly proved and established by the court of probate for the district of Westport. Upon the settlement of the administration account, the court of probate found that certain advancements had been made by the deceased, in his lifetime, to his son, Seymour, and to each of his daughters, and passed an order of distribution. Two of the distributors appointed by this order,

made their return, finding therein that they "examined the property of Mercy Taylor, widow of the deceased, and estimated the value thereof to be $600, which, added to the amount of the estate of said deceased, ordered to be distributed and divided agreeably to the provision of said will, gives to the three sons of the deceased, in trust for their children, respectively, each the sum of $843.38, and to the three daughters of deceased, each, out of said deceased's estate, the sum of $343.48." They then proceeded to divide the estate of the deceased, making the share of each daughter five hundred dollars less than the share in trust to each son. From the orders appointing distributors, and accepting a distribution so made, the daughters of the deceased appealed to the superior court, where the case was reserved for the advice of this court.

*Butler & Carter*, and *Wilson*, for the appellants.

*Loomis & Warner*, for the appellees.

STORRS, J. The decision of the present case, depends entirely on the correct construction of the following portion of the testator's will:

" And whereas my wife has, by will, given her property to my said daughters, my will is, that the property of my said wife shall be estimated at its fair value, and the share of my son Edward, and the share given to the children of my son Seymour, and the share given to the children of my son George, shall each share be three hundred dollars more than the share each given to my said daughters, after the estimated value of my wife's property is added to their respective shares."

The distributors of the estate deemed themselves bound by these directions, so to divide the property of the deceased, that the share of each daughter, in the entire patrimony, received by her, from both parents, should be less in value, by

three hundred dollars, than the share of the living son and of the representatives of each of the sons, deceased. The decree of the court of probate, approving a distribution made upon these principles, this court is now called upon to review.

Although the language of the testator is confused, and furnishes some color for opposite interpretations, we have concluded that he did not design so to discriminate, in favor of his male representatives, as to make them, on the whole, richer than their sisters; but, on the contrary, that his purpose was to secure to all his children an equal inheritance. His will was made during the life of his wife, who had already prepared her own last will and testament, in which she had bequeathed all her property to the daughters. To this fact he makes express allusion, and thereupon proceeds, not to make a retaliatory, and partial, appropriation in favor of his neglected sons, but to neutralize, so to speak, the preference made by his wife in behalf of their female children. He therefore provides, not that a son shall receive a larger inheritance from both parents, than a daughter, but that the former's proportion of the father's property shall be large enough to counterbalance the disparity created by the mother's disposition of her estate.

Some part of the language, made use of by the testator, whether taken in a strict, or ordinary sense, will admit of no other construction than that which we have adopted. He is dealing with his own property; parcelling out shares of his individual estate among his heirs; and he declares his will to be, that the "share, given" to each of one class of devisees, shall be three hundred dollars more than the share, given to each of another class. So far, his expressions are clear and unambiguous. It is not to be supposed that he is devising any property but his own. He is not distributing shares out of his wife's estate.

The question remains, whether there is anything in the other portions of the contested clause which requires violence to be done to the language first referred to, and which

should induce the court to believe that the testator was dividing his wife's estate, as well as his own.

Certainly, the antecedent member of the sentence, in which the testator gives a reason for making an unequal distribution of the estate, does not favor the construction approved by the court of probate. "Whereas," says the testator, "my wife has given her property to my daughters," &c., I am about to give my sons three hundred dollars more than I shall bequeath to my daughters. The testator discloses his motive for not making an equal division of his property among his children; it is because his wife has given her entire estate to the daughters. It would, at once, be inferred from this declaration, that he designed to correct this inequality; that he meant to suggest the wife's distribution of her property, as a reason for his own discrimination, in favor of his sons; and that his language was equivalent to an express assertion that, were it not for his wife's disposition of her separate estate, he would have devised his property in equal shares among all his children. It is difficult to see any practical logic in the process, which the appellees' construction of the will would impute to the testator's mind. A man might desire to make his sons richer than his daughters, but he would hardly give, as a reason for it, that his daughters were likely to receive more than his sons, of the estate of another person.

But it is said, that the deceased proposed to have an appraisal made of his wife's property, and that, upon the basis of this appraisal, there should be such a division of his own estate, as would make the entire patrimony of each son, (or, of the children of each son,) much larger than the entire patrimony of each daughter. This allusion of the testator to an estimate of his wife's property, it must be confessed, tends to complicate his meaning, but does not, in our judgment, involve the extraordinary construction claimed by the appellees. It would seem that the distributors attached to the word "share," in the controverted sentence, the force of the phrase, "share in the estate of both father and mother;"

and to this interpretation they rigidly adhere, even throughout the concluding clause, in which the testator speaks of adding the estimated value of his wife's property to his daughters' shares. If the latter word means shares, in both estates, the sense becomes too involved to be supposed to have been deliberately intended by the writer. If, on the other hand, the word "share" imports, as it naturally would, in such a context, the distributive portion which the testator was about to allot, out of his own estate, to each of his heirs, we then find, in the concluding clause, simply his declaration, (very awkwardly, and inaccurately, expressed,) that he had thus made his sons' shares the larger, only in view of the fact that his wife has bestowed her entire separate estate upon his daughters; or, (to quote his own language,) "after the estimated value of [his] wife's property is added to [his] daughters' respective shares." It is true that the clause, thus construed, neither adds to, nor detracts from, the preceding parts of the sentence. It is, in reality, mere surplusage. But in the testator's mind, it served the purpose of an explanation which he chose to 'make. He desires, he says in effect, that this unequal distribution of his property shall take place, only after it is settled, (as he believes it to be,) that his daughters are to receive all their mother's estate. This estate of the mother he has fairly estimated in his own mind, and considering it a fixed conclusion that his daughters are to inherit it, he is disposed to give his sons three hundred dollars more, out of his property, than he confers upon his daughters.

Some further embarrassment grows out of the expression, "My will is that the property of my said wife shall be estimated at its fair value." It is said that the testator contemplated a formal appraisal, after his death, of his wife's estate, which appraisal should serve as a basis for the distribution of his own. We can not, certainly, in view of the considerations already explained, give so extended a meaning to the foregoing phrase; but presume it simply an

expression of the testator's determination to make, in his own mind, a fair valuation of his wife's separate estate, with a view to adjusting his disposition of his own, between the children who were to receive nothing from their mother, and those, to whom, as he understood it, his wife had already " given her property."

We advise the superior court, therefore, that the distribution was erroneous, and the decree of the court of probate, accepting it, should be reversed ; a conclusion, which renders it unnecessary to consider the objection urged to the distribution, on the ground that it was made by only two of the distributors.

In this opinion, the other judges concurred.

Decree of probate reversed.